UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | CHAPTER 11 |
| Sanctuary Care, LLC, and | Case Number 17-10591 |
| Sanctuary at Rye Operations, LLC, | Case Number 17-10590 |
| | Joint Administration Motion Pending |
| Debtors | |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS AND ASSUMPTION AND <u>ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS</u>**

The debtors-in-possession, Sanctuary Care, LLC ("<u>SC</u>") and Sanctuary at Rye Operations, LLC ("<u>SRO</u>," and together with SC, the "<u>Debtor</u>") respectfully move this Court as follows:

**INTRODUCTION AND REQUESTED RELIEF**

1.  Pursuant to sections 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") Rules 2002, 6004, 6006, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 6004-1, the Debtor requests that this Court enter the proposed Order accompanying this motion (the "<u>Sale Order</u>") which authorizes the sale of substantially all of the assets of the Debtor (the "<u>Assets</u>") to NBR Acquisition Rye, LLC or its assignee, ("<u>NBR</u>"), or to any higher qualified bidder selected by the Debtor (the "<u>Qualified Bidder</u>," and together with NBR, the "<u>Buyer</u>"), pursuant to the terms of this Motion and that certain Asset Purchase Agreement dated March 8, 2017 entered

1

into by and between the Debtors and NBR (the "APA"), attached hereto as **Exhibit A**.[1]  The proposed sale shall be free and clear of all liens, claims, and interests to the maximum extent permitted by law with all valid liens to attach to the sale proceeds in the same priority and with the same effect as such liens had on the Assets.

2. By this motion (the "Sale Motion"), Debtor also requests authority to assume and assign certain executory contracts to the Buyer.

3. The Debtor will file with the Court a list of all of their executory contracts five (5) days before May 15, 2017 (the "Bid Deadline").  The Debtor's list will include a statement of the amount needed to cure any default under an executory contract.  The Buyer will then, five (5) days before the Closing Date (as defined in section 5.2 of the APA), identify which of the executory contracts the Buyer wishes to assume.  Any executory contract not identified by the Buyer shall be considered rejected as of the Closing Date.

4. Prior to the chapter 11 filing, the Debtor engaged in extensive efforts to sell the Assets, resulting in the execution of the APA.  The sale price to be paid by the Buyer under the APA is the result of arm's length negotiation and is fair and reasonable in all respects.  In the absence of the sale of its assets pursuant to the APA, the Debtor will likely face foreclosure by their lienholders and will cease to operate as a going concern.  In that event, substantial value will be lost, the lives of the persons who reside at the Debtor's facility will be severely disrupted, and the Debtor's employees will be laid off.  The APA provides that the sale to NBR shall be the subject of an auction in the event that a competing bidder submits a Qualified Bid to acquire the Assets.  The sale is in the best interests of the Debtor and their estates, including its residents and creditors.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the APA.

5. The Debtor's senior lienholder, Camden National Bank (the "Senior Lender"), consents to the relief requested in the Sale Motion, provided that its liens attach to the sale proceeds on a first priority basis, the net sale proceeds under the APA are distributed to the Senior Lender at Closing and provided that the Debtor's proposed selection of a higher and better offer than that of NBR at any auction of the Assets shall be subject to the Senior Lender's consent, not to be unreasonably withheld. It is unknown at this time whether the Debtor's junior lienholder, the New Hampshire Community Loan Fund (the "Subordinated Lender"), consents to the relief requested in this Sale Motion. However, for the reasons described below, the Debtor may sell the Assets free and clear of the Subordinated Lender's interests under Bankruptcy Code section 363(f) without its consent.

## JURISDICTION AND VENUE

6. The United States District Court for the District of New Hampshire (the "District Court") has original but not exclusive jurisdiction over this chapter 11 case pursuant to 28 U.S.C. § 1334(a) and over the Sale Motion pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C.§ 157(a) and Rule 77.4 of the District Court's local rules, the District Court has authority to refer and has referred this chapter 11 case and the Sale Motion to this Court.

7. This is a core proceeding pursuant to the 28 U.S.C. § 157(b)(2) and the Court has constitutional authority to enter final judgment in this proceeding.

8. Venue of the case and proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

9. The Debtor's business is described in the Functional Equivalent of Disclosure

3

Statement which accompanies the Sale Notice (the "Disclosure Statement") attached hereto as **Exhibit B**. The Disclosure Statement and the Sale Notice describe the Debtor's business, the Assets, and their value in the sale and a hypothetical liquidation. It explains that the Debtor intends to dismiss these cases or convert them to cases under chapter 7 of the Bankruptcy Code after the Sale. Finally, the Disclosure Statement explains to creditors why the Sale satisfies the "best interests of creditors" test.

10. The Debtors are each New Hampshire limited liability companies with a principal place of business at 295 Lafayette Road, Rye, New Hampshire 03870. SC was established in 2007 to construct and own real property in Rye, New Hampshire. SRO is the tenant of SC and operates a memory assisted senior living facility at 295 Lafayette Rd., Rye, New Hampshire (the "Real Property"). Pursuant to an agreement dated June 29, 2012, SC leased the Real Property to SRO for a term of fifty (50) years.

11. As debtor-in-possession, the Debtor remain in possession of its property and continues to operate its business pursuant to sections 1107 and 1108 of the Bankruptcy Code. SRO currently houses 35 memory care patients.

12. On April 25, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor has filed its Statements of Financial Affairs and Schedules. The United States Trustee has yet to hold the Initial Debtor Interview and the First Meeting of Creditors, or appoint an Official Committee of Unsecured Creditors.

## THE ASSETS AND RECORD LIENHOLDERS

13. The term "Assets," as defined in the APA includes the Real Estate and

substantially all of the Debtor's tangible and intangible personal property now or hereafter used in connection with the use, operation, maintenance, or management of their business.

14. Based on the UCC Lien Reports provided by the New Hampshire Secretary of State, the following parties assert liens on the Debtor's personal property Assets: the Senior Lender and the Subordinated Lender.

15. Additionally, based on a title search in the Rockingham County, New Hampshire registry of deeds, the following parties assert liens on the Real Property: the Senior Lender and the Subordinated Lender.

## BASIS FOR REQUESTED RELIEF

16. Before the commencement of these cases, the Debtor undertook diligent and active efforts to determine the value of what is now the property of the estate and establish the parameters of an acceptable offer for the Assets.  In August 2016, the Debtor retained The Vinca Group, LLC, whose principal is Alice Katz, as their chief restructuring officer ("CRO").  Since the CRO's retention, it has managed all aspects of the Debtor's day-to-day financial affairs and operations, exercising all powers delegated under the Debtor's organizational documents to the manager of the limited liability companies.  Prior to filing for bankruptcy, the Debtor took all necessary limited liability company actions to authorize the CRO to file the Debtor's bankruptcy cases, manage the cases, and the run a sale process.  Based on the CRO's extensive pre-petition role with the Debtor, the Debtor believes that the retention of the CRO is a transaction in the ordinary course of business that does not require this Court's approval under Bankruptcy Code section 363(c)(1).

17. Sections 363(b) and 1107 of the Bankruptcy Code authorize a debtor in

possession "after notice and a hearing, [to] use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(l).

18.     The authority to sell assets conferred upon a debtor in possession by Bankruptcy Code section 363(b) includes a sale of all or substantially all the assets of an estate.  *In re Coastal Cable T.V., Inc.*, 24 B.R. 609, 611 (1st Cir. B.A.P. 1982) (vacated on other grounds) ("A sale of all or most of the debtor's assets may occur prior to confirmation of a plan."); *In re CadKey, Inc.*, 317 B.R. 19, 24 (D. Mass. 2004) (affirming order authorizing the sale of substantially all of debtor's assets); *In re Envisionet Computer Services, Inc.*, 275 B.R. 664, 666 (D. Me. 2002) (noted that bankruptcy court had entered an order approving a sale of substantially all the debtor's assets); *see also, Otto Preminger Films. Ltd. v. Ointex Entertainment, Inc. (In re Ointex Entertainment. Inc.)*, 950 F.2d 1492, 1495 (9th Cir. 1991); *In re Haven Eldercare, LLC,* 2008 WL 2690729 (Bankr. D. Conn. 2008) (collecting cases).

19.     A sale of property fee and clear of liens and other interests may be a public auction or private sale.  Fed. R. Bankr. P. 6004(f)(1).

20.     The power to approve a sale under section 363(b) is to be exercised in the discretion of the court.  *See, e.g., In re WPRY-TV, Inc.,* 983 F.2d 336, 340 (1st Cir. 1993).

**I.     The Debtor Properly Exercised Its Business Judgment in Determining that the Sale is Fair, Reasonable, and in the Best Interests of the Estate.**

21.     A Debtor may sell assets under section 363(b) of the Bankruptcy Code if it properly exercises its business judgment, including obtaining a price is fair and reasonable that resulted from a good faith sales process.  See, e.g., <u>In re Coastal Cable T.V., Inc.</u>, 24 B.R. 609, 611 (1st Cir. B.A.P. 1982); <u>In re Abbotts Dairies of Pa.</u>, 788 F.2d 143, 147-50 (3d Cir. 1986)

22.     Prior to filing bankruptcy, the Debtor entered into a Letter of Intent with another

6

potential purchaser, but was unable to reach the terms of a final deal. NBR is the only person or entity that has entered into an APA with the Debtor.

23. Each Debtor is a fiduciary of its bankruptcy estate and has determined, in its reasonable business judgment, that (a) the APA is fair and reasonable; (b) the Purchase Price and method of payment represents the fair market value of the Assets; and (c) the sale as described in the APA is in the best interest of the creditors and each Debtor.

24. The sale process designed by the Debtor will assure that the Purchase Price paid for the Assets is the best possible price. NBR will pay the Debtor $9,650,000 or more in immediately available funds at the Closing, subject to customary closing adjustments. The APA provides that the Purchase Price payable by NBR is expressly subject to higher and better offers. The Debtor will advertise the sale of Assets. If a Qualified Bid is submitted to purchase the Assets, the Debtor will conduct an auction to determine the highest and best Qualified Bid. A Qualified Bid must meet the requirements set forth in the Bid Procedures, including that it must exceed the amount of the Purchase Price under the APA by the sum of at least $300,000. The $300,000 additional bid amount will satisfy the $250,000 break-up fee payable to NBR pursuant to the terms of the APA plus an additional $50,000 which will benefit the estate. A Qualified Bid must also be submitted by a Buyer that demonstrates its financial ability to close the transaction and that it will be able to obtain all necessary permits and approvals to operate the Debtor's assets. In the Debtor's opinion, this robust process will yield the best Purchase Price that the market will bear. In any event, the Debtor's believe that the Purchase Price in the APA, even if it is not increased by this process, is greater than the liquidation value of the Debtor's assets, and thus this process is in the best interests of the Debtor's creditors.

25. The continuity of care for the Debtor's elderly patients is of paramount

importance to the Debtor in the sale process. The Debtor believes that the process outlined above promises to protect patients. Among other things, Qualified Bidders must show both the financial wherewithal to promptly close the transaction, as well as the ability to be licensed by the State of New Hampshire.

26. Additionally, ensuring continued employment for their valued employees if of great importance to the Debtor. It is anticipated that the Buyer will hire many of the Debtor's current employees. At Buyer's option, Debtor shall either (a) pay to any employee hired by Buyer the amount of all accrued employee benefits for such employee accruing prior to the Closing Date, or (b) give Buyer a credit against the Purchase Price in such amount and Buyer will assume those obligations. Additionally, the Senior Lender has agreed to fund "stay bonuses" for certain of the Debtor's key employees from the sale proceeds. The identity of the key employees and the amount of their bonuses will be in the discretion of the CRO and will be paid from the sale proceeds at Closing in the amount identified in the Budget.

## II. The Debtor Has a Sound Business Purpose for Selling the Assets Outside a Plan of Reorganization

27. Even in the context of a proposed sale of substantially all of the property of a debtor outside of a plan of reorganization, courts have approved transactions where they serve a sound business purpose. The "sound business purpose" test requires a court to consider the following factors: (a) the proportionate value of the asset(s) to the estate as a whole; (b) the amount of elapsed time since the filing; (c) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (d) the effect of the proposed disposition on future plans of reorganization; (e) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property; (f) which of the alternatives of use, sale or lease the proposed

transaction envisions; and (g) whether the asset is increasing or decreasing in value. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 152-52 (D. Del. 1999).

28. Since *General Motors*, courts also consider the so-called "GM Factors". The GM Factors include: "(**i**) whether the estate has the liquidity to survive until confirmation of a plan; (**ii**) whether the transaction opportunity will still exist as of the time of plan confirmation; (**iii**) if not, whether it is likely that there will be a satisfactory alternative transaction opportunity, or a stand-alone plan alternative that is equally desirable (or better) for creditors; and (**iv**) whether there is a material risk that by deferring a transaction, the patient will die on the operating table.". *In re General Motors Corp.*, 407 B.R. 463, 490 (Bankr. S.D.N.Y. 2009).

29. The Debtor cannot continue to operate with its present debt burden, as evidenced by its cash collateral and post-petition financing budget. The Debtor has been unable to service its secured indebtedness for the past year and has required additional lending from the Senior Lender in order to pay regular operating expenses since August 2016. The alternative to a sale is therefore a foreclosure by the Debtor's lenders, which would result in the termination of all employees and require all the patients to be relocated. Under these circumstances, the Purchase Price set forth in the APA far exceeds the value that would be obtained through liquidation of the Assets.

30. Very little time has elapsed since the Petition Date. The Debtor made the decision to sell the Assets before the Petition Date because it has too much secured debt to operate profitably. Even if the Debtor were to file a plan of reorganization, it would be a sale-based, liquidating pot plan, but the risk of losing the Buyer and the Sale during the confirmation process is not prudent.

31. Thus, there is an articulated business justification and good, indeed compelling,

business reasons for consummating the transaction prior to a plan of reorganization. *See Boston Generating*, 440 B.R. at 322; s*ee also, In re GSC, Inc.*, 2011 WL 2845180 (Bankr. S.D.N.Y. 2011); *In re CGE Shattuck, LLC*, 254 B.R. 5, 12 (Bankr. D. N.H. 2000) (adopting *Lionel* analysis; noting that the "degree of court scrutiny of proposed transactions under §363 must be elastic -- becoming stricter and searching the nearer the transaction goes to the heart of the reorganization plan process").

### III. The Sale Free of Liens, Claims, Encumbrances, and Other Interests is Authorized by Bankruptcy Code Section 363(f).

32. The Debtors requests authorization to sell the Assets to the Buyer free and clear of all liens, claims, encumbrances, and other interests (including Federal, State, SUTA and FUTA, and the Debtor's workers' compensation "experience rating" and its "unemployment tax contribution rating") to the maximum extent permitted by Bankruptcy Code section 363 pursuant to the APA.

33. Section 363(f) of the Bankruptcy Code provides that a debtor may sell property free and clear of any lien, claim, encumbrance, or other interest in such property if one of the following conditions is met:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). "Because the language of § 363(f) is in the disjunctive, courts can approve a

sale if any one of the five conditions is satisfied." *BAC Home Loans Servicing LP v. Grassi*, 2011 WL 6096509 at *5 (1st Cir. BAP Nov. 21, 2011).

34.     The Senior Lender consents to the Sale of the Assets pursuant to the APA free and clear of its interests.  Thus, as to the Senior Lender, section 363(f)(2) is satisfied.

35.     The Debtors do not yet know whether the Subordinated Lender consents to the sale free and clear of its interests.  Nonetheless, the Debtor can sell its assets free of the interest of Subordinated Lender pursuant to Bankruptcy Code sections 363(f)(1) and 363(f)(5), because in a state law foreclosure proceeding by the Senior Lender, the Assets would be sold free of any interest of the Subordinated Lender, thus satisfying section 363(f)(1).  Additionally, the Subordinated Lender could be compelled to accept whatever sum is payable on account of its lien priority at such a foreclosure sale, thus satisfying the requirements of section 363(f)(5).

36.     All valid liens, claims, encumbrances, and other interests on the Assets will attach to the proceeds of the Sale in the same order of priority and with the same effect as they had on the Assets.  There is no reason to delay distribution of the sale proceeds to the Senior Lender.  Payment to the Senior Lender will stop or substantially reduce the considerable interest accrual on the Senior Lender's claims.

**IV.     The Buyer is Entitled to the Protections of Sections 363(m) and (n).**

37.     Under Bankruptcy Code section 363(m), "The reversal or modification on appeal of an authorization under subsection (b) . . . of a sale . . . of property does not affect the validity of the sale. . . to an entity that purchased . . . such property in good faith . . . unless such authorization and such sale . . . were stayed pending appeal."  Although the Bankruptcy Code does not define the term "good faith purchaser," the First Circuit has held that

a good faith purchaser is one who purchases property (1) in good faith; (2) for value; and (3) without knowledge of adverse claims. *See Greylock Glen Corp. v. Cmty. Sav. Bank*, 656 F.2d 1, 4 (1st Cir. 1981). The "good faith" of a buyer concerns the integrity of the buyer's conduct during the sales process. *In re Cable One CATV*, 169 B.R. 488, 493 (Bankr. D.N.H. 1994) (citations omitted). "Typically, the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (citations omitted).

38. Additionally, under section 363(n), "The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale . . . ."

39. Neither the Debtor nor any director, manager, or member of the Debtor has any interest in or affiliation with NBR, and neither NBR nor any director, manager, or member of NBR has any interest in or affiliation with the Debtor.

40. The terms of the APA were negotiated at arm's length between counsel for the Debtor and NBR.

41. Additionally, because of the sale procedures described above, the Purchase Price – under the APA or at the auction – did not result from, and was not controlled by, any fraud or collusion between the Buyer and other potential bidders.

**V.    Assumption and Assignment of Executory Contracts**

42. The executory contracts the Debtor intends to assume and assign to Buyer likely consist of several service contracts and patient agreements (the "<u>Executory Contracts</u>").  The Debtor will file with the Court a list of all Executory Contracts enumerating the asserted

necessary cure payments by the Bid Deadline.  The Buyer will then, five (5) days before the Closing Date (as defined in section 5.2 of the APA), identify which of the Executory Contracts the Buyer wishes to assume.  Any Executory Contracts not identified by the Buyer shall be considered rejected as of the Closing Date.

43.     The Debtor expects each counterparty to an Assigned Contract to consent to the assumption and assignment of the Assigned Contract and the Sale.

### VI.     Waiver of Stay Under Bankruptcy Rule 6004(h)

44.      Under Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

45.     Here, the Debtor operates an assisted living facility for elderly patients suffering from memory loss.  As set forth in the Debtor's cash collateral and post-petition financing budget, the Debtor will have access to sufficient funds to safely operate its facility provided that the closing occurs on or before June 15, 2017.  To the extent that the Buyer needs additional time to close, the APA provides that the Buyer may extend the Closing Date by no more than 30 days by paying the Debtor $75,000.00 to fund operations through the extended Closing Date.

46.     Thus, it is clear that the Debtor must be able to close on the transaction as soon as possible after approval of the Sale Motion by the Court in order to avoid the potential that the Debtor runs out of cash and is unable to meet its basic operating expenses.   Under these exigent circumstances, cause exists for waiving the 14 day automatic stay imposed by Bankruptcy Rule 6004(h).

### CONCLUSION

Based upon all of the foregoing, Debtor requests that this Court enter the proposed Sale Order authorizing the sale of the Assets to NBR, subject to higher and better offers in accordance with the provisions of the bid procedures approved by this Court.

                                          Respectfully submitted,

                                          **Sanctuary Care, LLC and**
                                          **Sanctuary at Rye Operations, LLC,**

Dated: April 26, 2017                       By:*/s/ Peter N. Tamposi*
                                          Peter N. Tamposi (BNH #04931)
                                          The Tamposi Law Group, P.C.
                                          159 Main Street
                                          Nashua, NH 03060
                                          603-204-5513
                                          peter@thetamposilawgroup.com

CERTIFICATE OF SERVICE

I, Peter N. Tamposi, do hereby certify that, on the date set forth below, a copy of the foregoing was this day forwarded to all parties who have requested notice via the Court's electronic filing system and, pursuant to LBR 6004-1(b)(1) upon the United States Trustee, upon any applicable government entity, and upon the Debtors' combined twenty (20) largest creditors, listed below, via first class mail.

Dated: April 26, 2017                    */s/ Peter N. Tamposi*

| | |
|---|---|
| Camden National Bank<br>2 Elm Street<br>P.O. Box 310<br>Camden, ME 04843<br>  - | Anthem Blue Cross and Blue Shield<br>PO Box 1168<br>Newark, NJ 07101-1168 |
| Eversource<br>P.O. Box 650047<br>Dallax, TX 75265 | Cook Little, Rosenblattb& Manson, PLLC<br>1000 Elm Street, 20th Flr.<br>Manchester, NH 03101 |

| | |
|---|---|
| Rye Water<br>60 Sagamore Rd.<br>Rye, NH 03870<br>- on Form 204 | Dead River Company<br>P.O. Box 11000<br>Lewiston, ME 04243-9402<br>- on Form 204 |
| Ecolab<br>PO Box 32027<br>New York, NY 10087-2027 | Eversource<br>PO Box 650047<br>Dallas, TX 75265-0047 |
| Town of Rye<br>10 Central Rd.<br>Rye, NH 03870 | Disposables Delivered<br>20 Portsmouth Ave, Unit 140<br>Stratham, NH 03885 |
| Baker, Newman & Noyes, LLC<br>P.O. Box 507<br>Portland, ME 04112-0507<br>- on Form 204 | Keenan Al-Hojerry<br>278 Lafayette Rd, Bldg E<br>Portsmouth, NH 03801<br>- on Form 204 |
| M Saunders Inc<br>PO Box 1106<br>Dover, NH 03821 | Network Services Co<br>29060 Network Place<br>Chicago, IL 60673-1290 |
| North Atlantic Services<br>P.O. Box 839<br>Epping, NH 03042<br>- on Form 204 | Seacoast Business Machines<br>11 Colonial Way<br>Barrington, NH 03825<br>- on Form 204 |
| NHARCH<br>53 Regional Drive Suite 1<br>Concord, NH 03301 | Shaheen Bros<br>95 Haverhill Rd.<br>P.O. Box 897<br>Amesbury, MA 01913 |
| Piscataqua Environmental Services<br>46 Darby Lane<br>Rochester, NH 03839 | State of New Hampshire Dept. of Health<br>And Human Services<br>129 Pleasant St.<br>Concord, NH 03301-3857<br>Attn: Melissa St. Cyr |
| Sage Age Strategies<br>17 Pierce Lane, Suite 1<br>Montoursville, PA 17754<br>- on Form 204 | Internal Revenue Service<br>Centralized Insolvency Operation<br>Post Office Box 7346<br>Philadelphia, PA 19101-7346 |
| The Vinca Group<br>10461 Mill Run Circle, Suite 215<br>Owings, Mills, MD 21117<br>- on Form 204 | State of New Hampshire<br>Dept. of Employment Security<br>45 South Fruit Street<br>Concord, NH 03301 |

| | |
|---|---|
| Camden National Bank<br>Attn. Kregg Jarvais and Alvin Butler<br>178 Court Street, Suite 300<br>Auburn, ME 04210 | Jeremy R. Fischer<br>Benjamin E. Marcus<br>Drummond Woodsum<br>84 Marginal Way, Suite 600<br>Portland, ME 04101<br>- counsel to the lender |
| CARLTON FIELDS<br>Attn:  Donald Kirk and Kate D'Agostino<br>One State Street, Suite 1800<br>Hartford, CT  06103<br>   - counsel to the buyer | New Hampshire Community Loan Fund<br>Attn:  Dan Luker<br>7 Wall Street<br>Concord, NH 03301<br>- counsel to the subordinate lender |
| Sanctuary Care LLC & Sanctuary at Rye Operations LLC<br>Attn. Alice Katz, CRO<br>295 Lafayette Rd.<br>Rye, NH 03870 | General Linen Service<br>75 Centre Road<br>Somersworth, NH 03878 |